Gallant's two claims, whether the restitution order was improper and whether there was a breach of the plea agreement, can be boiled down to one question. Was the vanchery or molloy, that's a mother and son, loss within the offense of conviction? If it was not, then the restitution order exceeded the statutory maximum and the government breached the plea agreement by advocating for a higher restitution amount. Can I ask you a practical question? Yes. This business about the amount of the restitution and whether X should have been considered, I forget her name, this is over about $4,000, $5,000, $8,000. Is this worth an appeal or is this just your hook to try and get a resentencing? Judge Corman, I believe this circuit is held in case . . . one case that comes to mind is United States v. Merino Montenegro, that even if it's just a special assessment . . . No, no, I'm asking a practical question, not a legal one. It strikes me that it would have cost that much money to do this appeal. The point is what this court has held, that if a court exceeds what's the defendant's right, then his rights have been violated. I don't think it makes a difference if it's a dollar or if it's a million dollars. Can we modify it? Can we modify the amount of the restitution to conform to the plea agreement? That would take care of the restitution problem. The issue here is the government presented someone as a victim when the defense position is that he was not a victim. What you're saying is that that itself is a basis to set aside to reverse, in effect, because the judge was exposed to a passionate victim impact statement and therefore it must have affected the actual sentence. Yes. So we're really not talking about $4,000 or $5,000. What you really want is essentially a new sentencing. Yes, and that's what we've asked for in our brief. The reason why we're entitled to that is because the government breached the plea agreement by presenting this victim as a victim. I just wanted to get to what you're really looking for. So determining whether the venturi loss was within the offense of conviction and whether this person was truly a victim is not as straightforward as the typical case because the government agreed that it did not have proof that all of the losses incurred by Galland's clients were the result of fraud. Indeed, the government acknowledged that the majority of the clients identified in the indictment as victims. That's at 857. While the offense of conviction can include victims that are not alleged in the indictment or the information, the offense of conviction cannot include victims outside the temporal scope of the indictment. That was this court's holding in Silkowski. Here Galland indicated at sentencing that the promissory note referred to by the government pertained to an earlier investment. Moreover, even assuming that this investment was within the temporal limits, the plea agreement recognized that not every client within this period of time was a victim. Finally, there's nothing in the record in anything presented by the government or the victim that this was a situation where Galland defrauded the venturis as opposed to simply an investment that had gone bad. What is the effect of the fact that your client agreed at sentencing to add the $11,972.54 to the restitution subject to an opportunity to provide information as to whether some portion of it had already been paid back? And he didn't dispute that the Malloys had invested. I understand your argument that he wasn't saying it was part of the offense conduct. But your client was at the sentencing and his lawyer was at the sentencing and both agreed to the procedure that the district court employed. I think it would be wrong to hold against Galland his failure to really not go along with that procedure at that point. The government had years to investigate this matter. It came in at the 11th hour and 59th minute with supposedly a new victim. This victim was in, the government had lots of records in this case so they certainly knew about this person. The PSR indicated a list of the victims. This person was not within that. The government didn't object at that point and say, we have an additional victim. And you have defense counsel who's really arguing for a downward variance and now to hold it against him because as Judge Korman pointed out, this is a loss of $4,000 to come and say, oh, don't look at this now. I think it would be improper to do that because you're putting the defendant . . . he's asking for a downward variance. But the first time that the argument is made that the plea agreement has been breached and that this is not a part of the offense conduct and this was done improperly is here on appeal. There was also time after the sentencing. Part of the problem was, as I did not represent the appellant in the district court, there was certainly a lapse that happened there because I was never appointed in the district court. I believe the defense counsel was relieved. You see what happened just even in the . . . with respect to the court's order adding the names of the victims. I never got notice of that. It was the first time I learned about that was when I got the government's brief and they attached . . . The footnote I think in your reply brief that you're not raising that. No, I know that, but the point is that's why to say that he didn't follow the procedure, I think what happened was defense counsel got relieved and now I get appointed at a later time. There's a notice of appeal that the district court doesn't have jurisdiction anymore and we're sort of in . . . this was my first opportunity to raise the claim before this court. The district court did depart downwardly from the guidelines. Right. On a guideline sentence, whatever the subtle distinction is between the two. Our position was had he not heard from somebody who was not a proper victim before him, we don't . . . there's certainly nobody could say whether he would have downloaded more. He certainly referred to this person in pronouncing sentence to what he called the victim when there was no evidence that he was a victim. Good morning. May it please the Court. My name is Tiffany Lee and I represent the government appellant. Your Honors, it is significant that at the time of the sentencing, Mr. Galan, who knows the facts of the case in addition to what the government knows and knows every individual that . . . who he had counsel with him, when Judge Geraci proposed that with respect to the by Mr. Galan, that was Mr. Galan's opportunity to say, I don't owe $11,000. I only owe X amount and here's the paperwork to show it. And he never did. Which . . . which you make of the fact that the . . . or the allegation that the government had all relevant material before it in entering into the plea agreement and that this was not in fact kind of newly discovered evidence that there was . . . there's an implication of kind of bad faith in raising this after the fact. Because we do have two different cohorts. We have the victims and then the people who were agreed to as having suffered some kind of loss that would be subject to restitution order. Correct. I would just point out that even in the defendant's own statement as to how Mr. Galan kept his records, that the search warrant yielded a lot of different types of paperwork and not everything could be put together. I know in speaking with the attorney who handled the case, Mr. Vansherry only came about after he had seen news accounts of Mr. Galan's plea in the local papers. That's when he kind of raised . . . you know, raised his issues and the government was unwilling to . . . to automatically say, okay, someone has walked in and said I'm a victim without looking further into whatever they had. And part of the problem was Mrs. Molloy's name, when she had invested with Mr. Galan, was Molloy and Mr. Vansherry had a different name. And so there were . . . there had to be some looking into before they were finally, you know, assured that really Mrs. Molloy did have a valid claim. And that did not come about until pre-sentencing. You're saying the papers were too disorganized to kind of place any burden on the government? Correct. Correct. And, you know, certainly if we had all the information . . . and that's why in negotiating with the defendant in the factual basis, we acknowledged that there could be potentially more victims. We said at least, you know, in terms of the loss amount that we counted for the sentencing guidelines. We said at least with respect to restitution. You also said the plea agreement says, pursuant to Title 18, the parties agree . . . Title 18, relevant provision . . . the parties agree that the court shall require restitution in the amount of specific amount to be paid by investors as part of the defendant's sentence. And then you come in and you argue for an amount above that. Why isn't the most natural reading of that, of this agreement, that you were in breach by advocating for a figure above what you'd agreed to? No, because this is one of those ideal circumstances that falls within our rights and reservation paragraph, which is paragraph 16D, in that the government reserves the right to modify its position with respect to any sentencing recommendation, including restitution, in the event that . . . It doesn't say including restitution. It just says sentencing recommendation and sentencing factors under the guidelines. So why isn't the most natural reading of that provision that it's talking about the guidelines and that you didn't make any such reservation with regard to restitution? No, I think the natural reading is sentencing recommendation includes factors that are not guideline-driven. So the guidelines . . . the reference to the guidelines in that provision does not modify sentencing recommendation? Correct. I mean, our belief is sentencing recommendation or sentencing factor under  which is different from saying . . . and deserves a fine of Y and deserves a restitution of this. I mean, this is clearly . . . this is what we intended with respect to this paragraph, because circumstances, particularly victims in a fraud case, they will come up sometimes, you know, even despite our best efforts to try and make sure we have everyone accounted for. And so this is, you know . . . this is why we have that rights and reservation there, in order to account for this possibility. Can I also ask . . . we've said that absent a stipulation and a plea agreement, a sentencing court can award restitution only for losses directly resulting from the conduct forming the basis for the offense of conviction. And here, the district court made no finding with regard to that for the venturi money. Why isn't that plain error? It's not plain error, because it does not affect . . . I mean, in these circumstances where Eduardo Galan . . . he's not disputing that the Molloy's are a victim. He's disputing the amount in which he owes the Molloy's as part of his scheme. I mean,  where does he . . . where does he admit that they are victims of the offense of conviction, as opposed to investors that . . . with him, that he may owe some amount of money to less than the one alleged? Well, I think, you know, if you read in total, he's not disputing the fact that, you know, that she is entitled to restitution. In total, it's basically . . . his main point is that it shouldn't be that big, which is on A58. Like, that's how he concludes. So he doesn't agree with the amount that's being submitted by the Venturi-slash-Molloy family. He's just disputing that, I believe I paid them back. But paid more. But the plea agreement separates the restitution amounts kind of into two. It's the offense of conviction. This is in G&H of paragraph 4. He defrauded a total of 18 investors out of a total of $821,912. And then at least 38 investors have invested money, and that they are presently owed at least $1,098,000 and so on. So there seems to be two different groups here, or ways of tallying the restitution amount. And one is more tightly tied to the conduct charged than otherwise. The second number seems to be just by way of agreement, and it's a little hard to tell what went into that pot. So how do we know which pot Ms. Molloy ends up in? I think it's . . . we know because of the way the government basically stated that Ms. Molloy was in 2009. If you look at . . . if you invested in the timeframe in which those who are outside, if you look at G, 4G, the loss is really tied to closer to that 2009-2013 time period. There were investors prior to 2005, and the reason why it was tied to this time period was in 2008, Mr. Golan basically, I believe, had been divested of his responsibilities under FINRA, under the Financial Industry Regulatory Authority. So he was no longer a securities broker at that point in time. And so, therefore, that's where the timeframe is somewhat captured. People before the time . . . people who invested when he was a registered broker, you know, there could be an argument that, you know, Golan was . . . that these were real investments. But certainly as to post-2008, when Mr. Golan was no longer a registered broker, we believe that that's when the fraud truly started in terms of the money being reassessed. I also had a question for you about the district court's entry in amended judgment after the notice of appeal was filed. Did the district court have jurisdiction to do that? We would say yes, that the district court had jurisdiction to do that. It, you know, basically, it acknowledges that the breakdown in terms of the victims had not been properly filed, and I think that's important. You would see that as simply a clerical error? It is a clerical error. We would see it as a clerical error. It wasn't intentional. It was just an oversight in terms of the list of victims. You deal with this argument that a real prejudice that he suffered was the judge listening to someone who was not really a victim and being moved in the sentence that he imposed. That's what really this appeal is about. I was standing all over this business about this $4,000 being in excess of the plea agreement. I don't understand how he's prejudiced in that he got a below-guideline sentence. Well, it could have gotten less. No, Your Honor, Judge Geraci said, I'm looking at, if you're looking at Judge Geraci's statements, he acknowledges receiving other letters from other victims, and he talked about how some of these investors, you know, some of these funds were meant for sending their kids to college or, you know, it came at a time of retirement. So these were all . . . it wasn't just the Vancheris. The Vancheris were, I think, representative because they actually spoke in court on the day of sentencing, but there were other victims in the courtroom who were acknowledged on the record on that day too. So I think he just cited the Vancheris as being representative of all the letters that he had received from the victims and the victimization that they suffered. So I don't believe that the Vancheris were given any greater weight because they spoke. They were just symbolic of all the other letters that they had given for this class of victims who had been impacted by the conduct of Eduardo Galán. Thank you. I see I'm out of time. The government says, oh, Galán should have said it at the time of sentencing that these were older loans. He did say that. He said these . . . that's at 857. I don't recall the exact amount of two old loans, but I . . . so he did refer to that. He referred to the fact that he believes that these were paid down in a way that was different from what was indicated by the Vancheris. But I think more importantly, if you search through this record, you will never find a statement by the government or by the Vancheris saying that this was the type of investment that was similar to the relevant conduct. There's no evidence in this record that the Vancheris' money was used for something else. That's the difference. If you look at the plea agreement . . . I'm having difficulty understanding the argument that it was error for the district court to hear Vancheris' testimony, however. I mean, setting aside whether there was a mistake about the findings with regard to restitution, why wouldn't this be relevant background, character, conduct information? The district court has broad discretion to hear any information relevant at sentencing so long as lawful, not unlawful. But it's true that the district court has broad discretion, but to the extent that it's hearing evidence that there was a loss, the preponderance still governs the 3553A factors. That's United States versus JUA. The court is not free. It's not completely free range. There has to be evidence. The Vancheris were presented as a victim, and the question is, were they a victim? The only way they were a victim is if, for example, Mr. Galan took that money that was given to him and used it for another purpose. If it was just, as the government said, like these 20 other victims, then he was not . . . he couldn't pay. The investment went bad, and he couldn't pay them back. That's not a victim, and therefore the court shouldn't have heard it. And the government points to the plea agreement to say, oh, there was a difference between the temporal scope. If you look at paragraph 4H, it's from 2005 to the present. So within those 38 victims, there were victims that were within the indictment period. I see my time is up. Thank you both. Well argued. We'll take it under advisory. Thank you.